## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JARED TEFFT, SR.,<br>　　Plaintiff,<br><br>　　v.<br><br>PATRICIA COYNE-FAGUE, Director for the ACI; MATTHEW KETTLE, Assistant Director for the ACI; JEFFREY ACETO, Warden for Maximum and High Security; MICHAEL MOORE, Deputy Warden for Maximum and High Security; WALTER DUFFY, Captain at High Security; JOSEPH FORGUE, Investigator for ACI; D. LAPOINTE, Lieutenant at Maximum Security; COREY CLOUD, Acting Deputy Warden for Maximum and High Security; BILLIE-JO GALLAGHER, Acting Departmental Grievance Coordinator; and JOSHUA MACOMBER, Lieutenant,<br>　　Defendants. | C.A. No. 21-124-JJM-PAS |

### MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Jared Tefft, Sr.'s claims arise out of his alleged involvement in the assault and stabbing of a correctional officer and the attempted stabbing of a second officer. After a hearing and grievance process, he was sentenced to twenty-five months of disciplinary confinement. He served thirteen months, and the remaining twelve months of the sentence was suspended. Mr. Tefft filed this suit against various

individuals from the Rhode Island Department of Corrections ("State")[1] under 42 U.S.C. § 1983, alleging deprivation of his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and under the *Morris* Rules.  Mr. Tefft seeks back pay, termination of restrictive status, expungement of bookings, restoration of good time, and punitive and nominal damages.

## I.   BACKGROUND

Mr. Tefft was booked and disciplined, along with other ACI inmates, for stabbing a correctional officer and attempting to stab a second officer with a contraband weapon.  Mr. Tefft was sentenced to twenty-five months of disciplinary confinement, serving thirteen months with twelve months suspended.  He went through grievance procedures, but Defendants denied his appeals.

Mr. Tefft filed this suit for violations of his Fifth, Eighth, and Fourteenth Amendments rights.  He alleges that he was "knowingly booked under false claims ... (1) for assault with a weapon on staff with serious injury, [and] (2) assault with a weapon on staff that did not involve serious injury, and (3) contraband of a weapon." ECF No. 1 at 10.  Specifically, he alleges that the booking for assault without serious injury never took place and that it was fabricated by Joe Forgue and Walter Duffy."

---

[1] Adult Correctional Institutions ("ACI") Director Patricia Coyne-Fague, Assistant ACI Director Matthew Kettle, Warden Jeffrey Aceto, Deputy Warden Michael Moore, Captain Walter Duffy, ACI Investigator Joseph Forgue, Lieutenant D. LaPointe, Acting Deputy Warden Corey Cloud, Acting Departmental Grievance Coordinator Billie-Jo Gallagher, and Lieutenant Joshua Macomber, in their individual and official capacities.

*Id.* He asserts constitutional violations because his disciplinary hearing was conducted by one person, not by a three-person panel, and that he was not allowed to call witnesses at his hearing or review evidence. *Id.* He also claims that Defendants took his legal and other paperwork. *Id.* Mr. Tefft alleges that his sentence of disciplinary confinement caused his injuries, including "poor mental health, depression with thoughts of suicide, anxiety, paranoia, and agitation," "problem sleeping due to the light staying on in High Security and officers doing count with flashlight then slamming door[s]." *Id.* at 11. He alleges that he suffered back pain because of poor bedding and a lack of movement, he lost 25 pounds, had little human contact, no access to exercise equipment, limited access to reading and legal material, no visits, limited opportunities for personal hygiene, no television or radio, strained relationships with his family, loss of his job and opportunity to earn good time, and the loss of his personal property. *Id.*

Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 11. Mr. Tefft opposes the motion and asks the Court to appoint him counsel. ECF Nos. 12, 13.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) tests the plausibility of the claims in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail,

but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102–03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

In his opposition to Defendants' motion, Mr. Tefft acknowledges that his complaint does not state a claim under the Fifth Amendment, so the Court dismisses that claim. That leaves his claims under the *Morris* Rules and the Eighth and Fourteenth Amendments for discussion.

## A.    The *Morris* Rules

The *Morris* Rules, established in *Morris v. Travisono*, 310 F. Supp. 857 (D.R.I. 1970), are court-created guidelines for prisons relative to prison conditions and treatment of inmates.  Mr. Tefft alleges that Defendants violated the *Morris* Rules by not providing him with a three-person panel during his disciplinary hearing and sentencing him to more than thirty days in solitary confinement.  Defendants rebut this claim by arguing that there is no private cause of action under the *Morris* Rules.

The Court agrees with Defendants.  This Court has observed that "the First Circuit found no state created liberty interest in the *Morris* Rules and therefore no right to enforce them in a damages action under federal law." *Paiva v. Rhode Island Dep't of Corrections*, 498 F. Supp. 3d 277, 282 at n.9 (D.R.I. 2020); *Lother v. Vose*, 89 F.3d 823 (1st Cir. 1996); *Weems v. Vose*, 89 F.3d 824 (1st Cir. 1996); *Heon v. Vose*, 86 F.3d 1146 (1st Cir. 1996).  As such, Mr. Tefft's complaint does not state a claim upon which relief can be granted as to his allegations under the *Morris* Rules.

## B.    Fourteenth Amendment Due Process Claim

Mr. Tefft alleges that his disciplinary and classification proceedings—and the resulting twenty-five-month sentence of disciplinary confinement—violated his Fourteenth Amendment rights.  The Court should first address whether Mr. Tefft's claims implicate a liberty interest.  Finding that they do, the Court then turns to the sufficiency of the process Mr. Tefft alleges he was provided.

### 1.    *Liberty Interest*

Prisoners held in segregation may have liberty interests protected by the Due

Process Clause of the Fourteenth Amendment.  The Supreme Court has held that discipline in segregated confinement may trigger due process considerations when it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (finding that thirty days in segregation does not implicate a liberty interest).  To be considered an atypical and significant hardship, disciplinary segregation must "present a dramatic departure from the basic conditions of [an inmate's] indeterminate sentence." *Id.* at 485.

Courts have recognized that an extremely long sentence of disciplinary confinement can be a significant factor in implicating a liberty interest.  *See Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (the Court found that placement in a supermax prison where conditions mimicked solitary confinement "impose[d] an atypical and significant hardship within the correctional context," and that the plaintiff inmates had a liberty interest); *see also Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–99 n. 3, 4 (7th Cir. 2009) (reversing dismissal and holding segregated confinement for 240 days potentially states claim to liberty interest); *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (segregation for 305 days "a sufficient departure from the ordinary incidents of prison life" to implicate liberty interest); *see also Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004) (solitary confinement in small space with minimal contact with others for over 500 days satisfies *Sandin* standard).  Allegations that are insufficient to violate a liberty interest on their own may do so when "taken in the aggregate, at the pleading stage." *Cook v. Wall*, No.

6

09-169 S, 2013 WL 773444, at *1 (D.R.I. Feb. 28, 2013).

Mr. Tefft was sentenced to twenty-five months of disciplinary confinement, where he served thirteen months and was subjected to near solitary confinement.[2] He alleges that he was denied visiting and phone call privileges. He was not allowed access to a radio, television, or newspapers. He has back pain because of poor bedding and lack of movement. He had limited opportunities for exercise and personal hygiene. He did not have a desk at which to write, nor storage for clothing and legal material. He was deprived of sleep because the lights stayed on in High Security and officers slammed the doors when doing the count. He had limited access to reading and legal material. Mr. Tefft lost his prison employment. Mr. Tefft alleges that these conditions do not "mirror" the conditions found in non-disciplinary settings such as administrative segregation and that of the general population.

Taken together, and drawing reasonable inferences in Mr. Tefft's favor, the Court finds that he plausibly claims a liberty interest in avoiding these conditions of confinement and the length of time he will be subjected to them. By any measure, receiving a twenty-five-month disciplinary confinement sentence where he would serve thirteen months with twelve months suspended presents an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Wilkinson*, 545 U.S. at 223–24; *see also DuPonte v. Wall*, 288 F. Supp. 3d 504, 509-11 (D.R.I.

---

[2] Mr. Tefft alleges that he was transferred to High Security where he served his disciplinary confinement sentence from May 17, 2018 until July 17, 2019. He alleges that he is currently on restrictive status but does not elaborate about those restrictions.

2018). The Court concludes that, at the pleading stage, Mr. Tefft's thirteen months spent in segregation implicates a protected liberty interest.

2. *Process Due*

Having decided that Mr. Tefft plausibly states a claim to a liberty interest, the Court must now turn to the question of what process he is due. *Wilkinson*, 545 U.S. at 224. "Because the requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands,'" the Court uses a three-factor framework to test the adequacy of procedures. *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The three factors the Court must consider are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Court finds that Mr. Tefft has met the first factor, as he has an interest in avoiding erroneously being confined to disciplinary segregation for more than a year. This is a valid interest even "within the context of the prison system and its attendant curtailment of liberties." *Wilkinson*, 545 U.S. at 225. Even though Mr. Tefft was incarcerated and restrained of his liberties, he alleges disciplinary segregation works a significantly greater loss than if he were to remain in the general prison population. This liberty interest is not "minimal." *Id.*

The second factor the Court must weigh is the risk of erroneous disciplinary confinement under the procedures in place, and the probable value of any additional

8

procedures. Notice of the factual basis for the placement and a fair opportunity for rebuttal are "among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Id.* at 225–26. "[M]ore formal, adversary-type procedures" can be warranted in certain disciplinary contexts. *Id.* at 228. These procedures can include written notice of the violation, at least twenty-four hours' notice to prepare a defense, a written statement by the factfinders explaining their decision, and the opportunity to call witnesses and present evidence. *Wolff v. McDonnell*, 418 U.S. 539, 564–66 (1974).

The Court finds that Mr. Tefft has not sufficiently pled any procedural deficiencies during the investigation and hearing of his infractions. In the context of the false booking, Mr. Tefft alleges that he was entitled to a three-person panel, but only Lieutenant Lapointe participated and had his mind made up about the sentence. A three-person panel is discussed in the *Morris* rules but is not constitutionally mandated so Defendants' failure to provide him with that is not a due process deprivation.

Mr. Tefft was given a full hearing on his bookings. He accessed the review process and grieved the discipline to Director Coyne-Fague, Mr. Kettle, Mr. Aceto, and Mr. Moore, was heard, and his appeals denied; Lieutenant Macomber denied his warden review; he sent letters to Mr. Forgue, Mr. Cloud, Mr. Aceto, and Mr. Gallagher containing his grievances and was told his allegations were unsubstantiated. He does allege that he was not allowed to call witnesses or see the evidence against him during his hearing. He claims that there is video evidence that

the booking is false that was not presented during his hearing.  But it is well accepted that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Wolff*, 418 U.S. at 566.

Moreover, Mr. Tefft does not allege the probable value of any additional procedures.  He only raises an issue with the validity of one of the three serious charges for which he was disciplined.  Even if that booking was thrown out, it is likely he would still have been given a lengthy disciplinary confinement sentence.  Mr. Tefft has not alleged that the procedure his bookings were processed through was deficient such that he was deprived of his liberty interest.

The third factor—the State's interest—cuts in favor of Defendants.  "In the context of prison management ... this interest is a dominant consideration." *Wilkinson*, 545 U.S. at 227.  "The State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves."  *Id.* Mr. Tefft was sentenced to disciplinary segregation for his alleged role in assaulting a correctional officer, attempting to assault another officer, and possessing a contraband weapon—some of the most serious offenses seen in a prison environment. This implicates an interest in the safety of prison personnel and other inmates. Because at this early stage of the litigation the balance of the *Mathews* factors suggest Mr. Tefft has failed to plausibly allege that he was denied procedural due process, the Court dismisses this claim against all Defendants.

## C.    Eighth Amendment

Mr. Tefft's claim under the Eighth Amendment stems from the thirteen months he spent in disciplinary confinement on a twenty-five-month sentence. He has claimed physical and mental damages resulting from deprivations involved in the conditions of segregation. Defendants argue that none of these deprivations rise to the level of an Eighth Amendment violation and that thirteen months in segregation does not constitute cruel and unusual punishment.

To state a claim under the Eighth Amendment, a prisoner must plausibly allege that he faces cruel and unusual conditions of confinement and that the prison officials were deliberately indifferent to those conditions. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). Deliberate indifference requires that "(1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk." *Calderon–Ortiz v. LaBoy–Alvarado*, 300 F.3d 60, 64 (1st Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 835–40 (1994)).

Punishment in prison as part of ordinary prison life may violate the Eighth Amendment if "it is extremely disproportionate, arbitrary or unnecessary." *O'Brien v. Moriarty*, 489 F.2d 941, 944 (1st Cir. 1974). In *O'Brien*, the First Circuit rejected an Eighth Amendment claim where the prisoners received the same food as others,

did not complain of heat, sanitation, lighting, or bedding; and were allowed out of their cells for an hour each day. *Id.* However, the court noted that, if imposed "for too long a period, even the permissible forms of solitary confinement might violate the Eighth Amendment," and that most cases upholding solitary confinement are where it is "a *short-term* punishment for disciplinary infractions." *Id.* (emphasis added); *see also Hutto v. Finney*, 437 U.S. 678, 687 (1978) (unpleasant conditions of confinement "might be tolerable for a few days and intolerably cruel for weeks or months").

The Court concludes that, at this stage, Mr. Tefft has plausibly alleged an Eighth Amendment violation. As discussed in the preceding sections, Mr. Tefft has alleged conditions tantamount to solitary confinement. While these conditions may be permissible in short bouts under some circumstances, Mr. Tefft lived under solitary conditions for thirteen months. In recent years, society has become increasingly aware of the profound impact that solitary confinement can have on an individual's mental and physical health. It is plausible that a reasonable factfinder could conclude that the conditions Mr. Tefft alleges he lived under for more than a year violate the "evolving standards of decency that mark the progress of a maturing society." *Trop*, 356 U.S. at 101.

Furthermore, Mr. Tefft's allegations that Defendants acted with deliberate indifference are plausible. First, placement of prisoners in solitary confinement poses a substantial risk of serious harm. "[I]t is well documented that ... prolonged solitary confinement produces numerous deleterious harms." *Glossip v. Gross*, 576 U.S. 863,

926 (2015) (Breyer, J., dissenting); *see also id.* (citing authorities). The damage that prolonged solitary confinement can inflict upon the human mind has been long documented and acknowledged, both around the world and at home. *See id.* (noting the United Nations Special Rapporteur on Torture has called for a global ban on solitary confinement exceeding fifteen days); *see also Davis v. Ayala,* 576 U.S. 257, 287-88 (2015) (Kennedy, J., concurring) (recounting the horror that solitary confinement instilled in prisoners in Britain even in the eighteenth century and citing authority to the present that shows "growing awareness" of the harmful effects of solitary confinement in modern American penal systems).

Second, Defendants know this because a Rhode Island legislative panel studied it. In 2017, the Rhode Island Special Legislative Commission to Study and Assess the Use of Solitary Confinement at the Rhode Island ACI ("Commission") published a report,[3] recognizing that the practice of solitary confinement is "dehumanizing." *Id.* at 2–3. The Commission heard testimony from individuals subjected to solitary confinement, who testified to "the lasting negative impact of their isolation ... on their mental and physical health." *Id.* at 8. The Report cites testimony about "the lack of any empirical evidence of the effectiveness of solitary confinement as a tool to deter recidivism or change a prisoner's behavior." *Id.* Among the recommendations of the Commission are "time limits," including "15 day maximum sentence for disciplinary confinement." *Id.* at 12–13. Mr. Kettle presented testimony to the Commission and the previous Director of the Rhode Island Department of Corrections was a member

---

[3] *See* https://www.rilegislature.gov/Reports/Solitary%20final%20report.pdf.

of the Commission.  ACI leadership knew that this report concluded that extended solitary disciplinary confinement has deleterious effects.

Finally, Mr. Tefft has alleged that Defendants ignored the risk of harm he would suffer in solitary confinement.  Even though the Report recommends limiting disciplinary confinement to a period not to exceed fifteen days, Mr. Tefft was sentenced to twenty-five months with thirteen to serve and twelve months suspended.  Defendants raise the fact that Mr. Tefft received such a long sentence in response to his conviction of three of the most serious offenses an incarcerated person can commit.  These may be circumstances where disciplinary segregation is a necessary punishment, but Mr. Tefft has plausibly alleged that a twenty-five-month sentence with thirteen to serve in solitary confinement is so extreme and intolerably cruel that the Court finds that Mr. Tefft has adequately alleged that Defendants acted with deliberate indifference.

### D.   Motion to Appoint Counsel

Mr. Tefft asks the Court to appoint him counsel to assist him because he cannot afford counsel and because his incarceration limits his ability to present his case.  There is no constitutional right, however, to free counsel in a civil case.  *DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991).  To convince a court that he is entitled to an attorney, a plaintiff "must demonstrate that he was indigent and that exceptional circumstances were present such that a denial of counsel was likely to result in fundamental unfairness impinging on his due process rights." *Id.*

After a thorough review of his case, the Court finds that Mr. Tefft has not

demonstrated that exceptional circumstances exist despite his incarceration and claim of ignorance of the law.  Mr. Tefft's case presents simple legal issues and the complaint he filed is clear and straightforward.  Mr. Tefft's motion to appoint counsel is DENIED without prejudice.  ECF No. 13.

## IV.    CONCLUSION

Mr. Tefft has not stated a plausible claim under the *Morris* Rules, the Fifth Amendment, or for a due process violation under the Fourteenth Amendment.  Those claims are dismissed.  However, viewing the cruel and unusual punishment standard through the lens of "the evolving standard of decency that mark[s] the progress of a maturing society," the Court finds that Mr. Tefft has stated a claim under the Eighth Amendment.  Defendants' Motion to Dismiss is GRANTED IN PART and DENIED in Part.  ECF No. 11.  Mr. Tefft's Motion to Appoint Counsel is DENIED without prejudice.  ECF No. 13.


IT IS SO ORDERED.

_____

John J. McConnell, Jr.
Chief Judge
United States District Court

December 8, 2021